DOROTHY REDDICK-STOAKLEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Reddick-Stoakley v. Commissioner
Docket No. 18612-87
United States Tax Court
T.C. Memo 1989-663; 1989 Tax Ct. Memo LEXIS 663; 58 T.C.M. (CCH) 989; T.C.M. (RIA) 89663; December 21, 1989
*663 Leonard Murray, for the petitioner. Elsie Hall, for the respondent. RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION RUWE, Judge: Respondent determined deficiencies and additions to tax in petitioner's Federal income taxes as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2)
1983
$ 1,291
$ 65.00
50 percent of
interest due on
$ 1,291
1984
1,079
54.00
50 percent of
interest due on
$ 1,079
1985
1,053
53.00
50 percent of
interest due on
$ 1,053
The issues for decision are: (1) Whether petitioner understated gross income from her husband's taxicab business for the taxable years 1983 through 1985; and (2) whether petitioner is liable for the additions to tax as determined by respondent pursuant section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of *664 facts and attached exhibits are incorporated herein by this reference. Dorothy Reddick-Stoakley, petitioner, resided in Chicago, Illinois, when she filed her petition in this case. She timely filed joint Federal income tax returns for the taxable years 1983 through 1985 with the Internal Revenue Service Center in Kansas City, Missouri. During the taxable years in issue, petitioner was married to Edward Stoakley, who drove a taxicab which he leased from the Yellow Cab Company (Yellow Cab). Petitioner's husband was responsible for all expenses related to the operation of the leased taxicab. The revenues that petitioner's husband received and the expenses that he paid in connection with his taxicab business were all in cash. Yellow Cab did not maintain any records with respect to the mileage on the vehicles which were leased to its cab drivers nor did Yellow Cab maintain any accounting records with respect to the income earned by its cab drivers. Petitioner's husband sporadically recorded the gross receipts from his taxicab business on envelopes. He gave these envelopes along with receipts for his expenses to petitioner who recorded them in ledger books. Petitioner accepted *665 the figures reported on the envelopes by her husband as being an accurate accounting of the gross receipts from the taxicab business. Petitioner never assisted her husband in counting his gross receipts, and never questioned that the gross receipts that her husband reported on the envelopes may have been understated. Petitioner used the information contained in these ledger books when reporting the income and expenses of her husband's taxicab business, on Schedule C, for the taxable years 1983 through 1985. With the exception of two pages from a 1984 ledger book, these ledger books are no longer available. Petitioner has three adult daughters, Denise Reddick, Derise Reddick, and Cheryl Reddick, who were born from a prior marriage. With the exception of Denise, who moved out in August 1985, all three of petitioner's daughters resided with petitioner during the taxable years in issue. While living with petitioner, Denise and Derise did not give petitioner's husband any money. Similarly, Denise and Derise did not see petitioner give her husband any money during any of the taxable years in issue. Petitioner's father and granddaughter also resided with petitioner during the taxable *666 years in issue. Petitioner and her husband separated in 1986, and she has not seen him since. Petitioner has worked for the Internal Revenue Service for over 27 years, and during the taxable years in issue, held the position of Appeals Officer. Petitioner prepared the joint Federal income tax returns, which she and her husband filed, for the taxable years 1983, 1984, and 1985. On these tax returns, petitioner reported losses from her husband's taxicab business of $ 6,055.74 for 1983, $ 7,833.00 for 1984, and $ 4,949.00 for 1985. These losses were computed as follows: 1983
1984
1985
Gross receipts or sales
$ 18,023.96 $ 15,412.00 $  2,235.90 Tips
*      2,385.00  **     Less:
COGS and/or operations
(17,487.00)
(19,616.00) *** (7,185.00)
Gross Income
$    536.96 $ (1,819.00)
$ (4,949.00)
Less:
Gas
6,085.00 5,274.00 Washes
487.50 485.00 Tolls
20.20 20.00 Miscellaneous
--     227.00 License Renewal
--     8.00 Total Deductions
6,592.00 6,014.00 Net Loss
$ (6,055.74)
$ (7,833.00)
*667 For the 1982 taxable year, petitioner also reported a loss from her husband's taxicab business in the amount of $ 6,315.01. This loss was computed as follows: Gross receipts or sales
$ 18,853.55 Less:
COGS and/or operations
--    Gross Income
18,853.55 Less:
Leasing cost
16,872.00 Gas/Propane
7981.56 License (City)
15.00 Washes
300.00 Total Deductions
25,168.56 Net Loss
($ 6,315.01)
Upon audit, petitioner verified part of the expenses from her husband's taxicab business claimed on her Schedule C forms for the taxable years in issue, but could not verify any of the gross receipts. Respondent performed an analysis of petitioner's checking account for the taxable years 1984 and 1985, and compared the amount of checks she wrote during each year against her net wages. The amount of checks that petitioner wrote, during 1984, totaled $ 21,209, which was $ 5,626 more than her net wages from the Internal Revenue Service of $ 15,582. Similarly, the amount of checks which petitioner wrote during 1985 totaled $ 22,858, which was $ 5,750 more than her net wages from the Internal Revenue Service of $ 16,791. Respondent *668 concluded, that with the exception of $ 1,998 of gasoline and insurance charges paid by petitioner during 1984, that petitioner did not give her husband any money to pay for the expenses which were in excess of reported revenues for the taxable years in issue. Respondent, therefore, concluded that the taxicab business itself was the source of the additional income which enabled petitioner's husband to pay for his expenditures. Using the source and application of funds method of reconstructing income, respondent determined that petitioner understated gross income from her husband's taxicab business by the amounts of $ 3,227, $ 5,273, and $ 4,949 for the taxable years 1983, 1984, and 1985, respectively. Respondent's computation was as follows: Sources of Funds
1983
1984
1985
Gross Income -- Schedule C
(including tips reported)
$ 18,024
$ 17,797
$ 2,236
Cash on Hand -- January 1
100
100
100
Insurance charges paid by wife
--  207
--  Gasoline charges paid by wife:
Texaco charges
--  1,500
--  Stoney Island standard charges
--  291
--  Total Sources of Funds
$ 18,124
$ 19,895
$ 2,336
Application of Funds
1983 1984 1985 Substantiated Schedule C expenses:
Lease payments
$ 17,487
$ 19,616
$ 5,775
Gasoline -- Cash
3,008
4,168
1,260
Gasoline -- Texaco charges
723
777
--  Gasoline -- Stoney Island standard
charges
--  291
--  Washes
13
--  --  Tolls
20
1
--  Miscellaneous
--  207
150
License Renewal
--  8
--  Cash on Hand -- December 1
100
100
100
Total Application of Funds
$ 21,351
$ 25,168
$ 7,285
Excess of Applications over
Sources
$  3,227
$  5,273
$ 4,949
*669 The net effect of respondent's adjustments to petitioner's income is to disallow the losses from the taxicab business that petitioner claimed for each of the taxable years in issue. [2]
OPINION This Court has consistently recognized the source and application of funds method as an acceptable method of reconstructing income. ; ; ; . This method is premised on the assumption that the amount by which a taxpayer's application of funds exceeds his known sources of income during a taxable period is attributable to taxable income, absent some showing by the taxpayer of a nontaxable source. . Petitioner bears the burden of proving that the excess expenditures *670 of her husband's taxicab business are attributable to nontaxable sources. ; Rule 142(a). Initially, petitioner contends that respondent's deficiency determinations were arbitrary and capricious, thereby shifting the burden of going forward with the evidence to respondent. When a taxpayer asks this Court to find that the statutory notice of deficiency is arbitrary, he is asking this Court to look behind that notice. , affd. . It is well settled that, as a general rule, this Court will not look behind the statutory notice of deficiency to examine the evidence used or the propriety of respondent's motives involved in making his deficiency determination. ; . This is because a trial before this Court is a proceeding de novo in which a taxpayer's tax liability is based on the merits of the case and not on any previous record developed at the administrative level. . *671 Only under rare circumstances, none of which are present here, will this Court look behind the statutory notice of deficiency and examine respondent's basis for issuing the notice. , and cases cited therein. Petitioner argues that respondent acted arbitrarily because he failed to show any support for the methodology employed to reconstruct petitioner's income. We do not agree that respondent acted arbitrarily. Respondent performed a source and application of funds analysis on the taxicab business, which was operated by petitioner's husband. This is an acceptable method of determining whether a taxpayer has failed to report additional gross income. During the audit, respondent examined petitioner's expense documents and ledgers which she maintained on her husband's taxicab business. We note that these ledgers were merely a summation of monthly activity, and were not a detailed record of daily gross receipts and expenses as petitioner contends. Respondent also examined petitioner's bank statements, sources of income, and all of her cancelled checks, for each of the taxable years in issue, and concluded, with certain *672 exceptions, that petitioner's own resources had not been used to pay for the expenses attributable to her husband's taxicab business. Respondent, therefore, concluded that the taxicab business itself was the source of the additional income which enabled petitioner's husband to pay for his taxicab operating expenses. During the audit, petitioner was asked several times by the revenue agent to explain where her husband received the additional funds to pay for his business expenditures. Petitioner's initial explanation was that she rarely gave her husband any money and that he may have received the additional funds from his relatives as either loans or gifts, or from cash advances on his Visa credit card. Petitioner maintained this position through the course of the audit and until the closing conference which was held at petitioner's house, on January 8, 1987. At the closing conference, petitioner, for the first time, told the revenue agent and his manager that her daughters had been paying her $ 400 to $ 500 per month in cash as room and board during the taxable years in issue, and that this money was used to fund her husband's taxicab expenses. Petitioner's primary argument on *673 brief is that she received monthly cash payments from her three daughters and her father, who lived with her during the taxable years in issue and that this money was used by her husband to pay for his taxicab expenses. To corroborate her testimony, petitioner called two of her daughters, Derise Reddick, and Denise Reddick, who testified that they made monthly cash payments to petitioner. The evidence on the record, however, is inconclusive as to the exact amounts of cash which petitioner allegedly received from these sources. Neither petitioner nor any of her family members maintained any type of record as to the amounts which petitioner allegedly received from her family members. In addition, petitioner introduced no evidence of specific amounts which her husband allegedly took from her or what disposition he made of any such amounts. We found the testimony as to the amounts that petitioner allegedly received from her family members and gave to her husband to be vague, indefinite, and unreliable. Petitioner has failed to meet her burden of proof. We therefore sustain respondent's deficiency determinations for the taxable years 1983 through 1985. The next issue for decision *674 is whether petitioner is liable for the additions to tax under section 6653(a)(1) and (2), for the taxable years 1983 through 1985. Section 6653(a)(1) imposes a 5 percent addition to tax if any part of an underpayment of tax is due to negligence or intentional disregard of rules and regulations. Section 6653(a)(2) provides for a separate addition to tax equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence or intentional disregard of rules and regulations. Respondent's determination is presumed correct and petitioner bears the burden of proving otherwise. ; Rule 142(a). Negligence within the meaning of section 6653(a) has been defined as the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . Petitioner has offered no credible evidence that the underpayments of tax, or any part thereof, are not due to negligence or intentional disregard of rules and regulations. From 1982 through 1985, petitioner reported over $ 25,000 in losses from her husband's taxicab *675 business. Petitioner contends that she subsidized these losses through cash that she received from family members. Petitioner's testimony indicates that, despite the large amounts of reported losses, she never questioned her husband about his purported losses, or about the accuracy of his gross receipts. Petitioner did not maintain any type of record as to the amounts of money which she purportedly gave to her husband to subsidize his taxicab business. Petitioner has been an employee of the Internal Revenue Service for more than 27 years, and she is reasonably conversant with Federal income tax law. Based on the record in this case, we find that petitioner has not met her burden of proving that the understatements are not due to negligence. Accordingly, we sustain respondent's determination regarding the additions to tax under section 6653(a)(1) and (2) for the taxable years 1983 through 1985. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. For taxable year 1983, gross receipts or sales included tips earned. ** For taxable year 1985, gross receipts or sales included tips earned. ***For taxable year 1985, COGS and/or operations include the following: ↩
Leasing
$ 5,625.00
Penalties and Rebates
150.00
Bond Fee
1,260.00
Gifts
150.00
Total
$ 7,185.00
2. Only substantiated expenses were used in the source and application of funds computation. Respondent also disallowed unsubstantiated taxicab expense deductions. Petitioner has conceded these items.↩